UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT C. COURBOIN,<br><br>    Plaintiff,<br><br>v.<br><br>CANDACE SCOTT; SCOTT AND DALY, LLC; CANDACE SCOTT, LLC; KALMAN A. BARSON; BARSON GROUP, LLC; ARTHUR J. SMITH; ARTHUR J. SMITH APPRAISALS, LLC,<br><br>    Defendants. | Civ. No. 15-cv-2639 (KM)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

**A.   Introduction**

The plaintiff, Robert C. Courboin, is suing the lawyers who represented his ex-wife, as well as expert appraisers hired by his ex-wife, in his divorce proceeding. He asserts claims under RICO and the antitrust laws.

Now before the Court are the following motions:

Motion (ECF no. 7) of defendants Arthur J. Smith Appraisal, LLC and Arthur J. Smith (the "Smith Defendants") to dismiss the complaint for lack of jurisdiction and failure to state a claim, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

Motion (ECF no. 9) of defendants Candace Scott, LLC, Candace Scott, and Scott and Daly, LLC (the "Scott Defendants") to to dismiss the complaint for failure to state a claim, under Fed. R. Civ. P. 12(b)(6)

Motion (ECF no. 9) of defendants Candace Scott, LLC, Candace Scott, and Scott and Daly, LLC (the "Scott Defendants") to to dismiss the complaint for lack of jurisdiction, under Fed. R. Civ. P. 12(b)(1)

1

Defendants Kalman A. Barson and Barson Group, LLC (the "Barson defendants") have not filed a motion.

For the reasons stated herein, the motions will be granted.

**B.     Allegations of the Complaint**

This *pro se* complaint ("Cplt.," ECF no. 1) is not divided into numbered paragraphs or separate causes of action. Nevertheless, I can glean the following allegations, which are presented in summary form.

Plaintiff's allegations arise from his divorce proceedings in New Jersey Family Court in 2009–11. The Scott defendants represented Mr. Courboin's ex-spouse (here referred to by her first name, Jeanne, to avoid confusion). James Jensen, Esq., represented Mr. Courboin. (Cplt. at 2–3)

Courboin alleges that the defendants have conspired "to remove tens of thousands of dollars from the citizens of New Jersey, in violation of the Sherman Act and/or the Clayton Act." RICO is also cited. The first paragraphs single out lawyers, judges, and the legal system. (Cplt. at 1) The trial, says Courboin, was nothing more than a "collaboration between the players to remove the assets of clients." (Cplt. at 3)

It is alleged that "Jeanne was charged well over $200,000 for the simplest of divorces," draining the marital assets. (Cplt. at 3) In particular, the complaint alleges that defendant Scott's selection of appraisers resulted in inflated charges. State Family Court Judge James DeMarzo noted the expense but did not institute an investigation. (Cplt. at 2)

The complaint states that there are many more reasonably priced real estate appraisers in the area, but that counsel selected the Smith Defendants, who are the highest priced appraisers in the County. (Cplt. at 4) The Smith Defendants seemingly charged $550. (*E.g.,* Cplt. at 7) Plaintiff makes "a very educated guess" that the Smith defendants used outdated software, producing an outdated form. (Cplt. at 5) The Barson defendants, accounting/appraisal experts, are alleged to charge prices nine times higher than others. (Cplt. at 4) Their bills, it is stated or implied, exceeded $56,000. (Cplt. at 5)

2

Courboin attaches invoices of his own experts, who charged far less. (Cplt. at 6–8) He also attaches a letter concerning his own complaint to the Attorney Ethics Committee of the New Jersey Supreme Court. (Cplt. at 8)

Courboin's complaint refers obliquely to other litigation. The complaint states that "I will not accept the dismissal of my complaint as the end of the story." (Cplt. at 9)

The prayer for relief is as follows:

1. I want the stolen $200,000 returned, three fold.

2. I want the entire Civil/Family Law component of NJ Law looked at for anti-trust acts. I want criminal proceeding brought against any instances found which resemble my charges and safeguards put in to avoid future abuses.

3. I want to be paid for my time fighting these thieves.

4. I demand punitive damages under the Sherman Act and/or Clayton Act, which doesn't limit me to "treble damages".

(Cplt. at 12)

## C. Prior actions involving these parties and matters

This action stems from Mr. Courboin's dissatisfaction with the conduct and outcome of his divorce proceedings in New Jersey Superior Court, Family Division, Morris County. In other actions, he has sued the attorneys who represented his ex-wife, as well as expert accountants and appraisers retained by her in connection with the divorce action, the judge, the State Bar, the Governor, and others.

**1.** The Family Court divorce proceeding, *Jeanne Courboin v. Robert C. Courboin*, No. FM-14-1380-09, ended in an agreed settlement, so-ordered by Judge DeMarzo. (ECF no. 7-5 at 84) Apparently, Mr. Courboin was no longer represented by counsel at the time of the settlement.

**2.** On February 23, 2012, Mr. Courboin filed an action against Scott and her law firm in the Superior Court of New Jersey, Law Division, Morris County. *Courboin v. Scott et al.*, No. L-433-12. That complaint alleges that there was "perjury" in the divorce proceedings, that defendants multiplied the costs of the

proceedings; that they "stole" over $100,000 from Jeanne (the reference is to the expensive appraisers); and that the Morris County judges, who are "buddies" with the lawyers, refused to stop it. The complaint relates that despite his life long pacifism, Couboin was pushed into considering "violence via a tire iron." (ECF no. 9-2 at 5–6) On defendants' motion, this complaint was dismissed with prejudice for failure to state a claim. (ECF no. 9-2 at 10–11)

**3.** On May 8, 2012, Mr. Courboin filed an action against the New Jersey Bar Association, Members of the Bar, Judges, and the Governor of New Jersey, in the United States District Court for the Middle District of Florida. *Courboin v. New Jersey Bar Association, et al.*, No. 12-cv-01020. (ECF no. 9-2 at 30) The allegations of this complaint duplicate, often verbatim, the allegations against the Scott defendants in this action relating to inflated fees, the complaisant attitude of the judiciary, and so forth. It contains other allegations as well. That Florida district court action, on motion of the defendants, was dismissed on various grounds, including failure to state a claim and failure to serve the unidentified defendant "members of the bar." (ECF no. 9-2 at 56)

**4.** In July 2012, Mr. Courboin was subjected to a Warrant and Detainer of the Superior Court of New Jersey, Family Division, Morris County (Docket no. FM 14 1380 09) for failure to appear on a contempt charge. (ECF no. 9-2 at 54) The contempt charge apparently arose from a series of abusive and threatening letters from Courboin to Judge DeMarzo. Courboin himself submits a copy of an order of the court referring to "contemptuous and/or threatening correspondence, posting, blogs, etc. to the Honorable James M. DeMarzo, J.S.C. ...." (ECF no. 14 at 18) Defendant attaches copies of the letters themselves, but I will confine myself to court filings.

**5.** On December 11, 2013, Mr. Courboin filed a second action in the United States District Court for the Middle District of Florida. *Courboin v. Scott et al.*, No. 13-cv-3109. (ECF no. 9-2 at 63) The list of defendants is precisely the same as the defendant roster in the action: *i.e.*, it consists of the Scott defendants and the Smith defendants, as well as Mr. Barson and his firm. The

4

allegations, too, are virtually the same as those asserted in this action—often verbatim but virtually always in substance. The causes of action—Sherman Act, Clayton Act, and RICO—are likewise identical to those in the current action. The prayer for relief, too, is identical, although it includes additional demands for a "failsafe method" to protect consumers and an investigation of Judges DeMarzo, Rand, and Ramsey, in Morris County, New Jersey. (ECF no. 9-2 at 68) This action was dismissed: the chief grounds were lack of personal jurisdiction and improper venue. (ECF no. 9-2 at 71) Affirming, the U.S. Court of Appeals for the Eleventh Circuit considered the merits of the RICO claim, and found that it was not "colorable." It did so in connection with its determination that Courboin was not entitled to the benefit of RICO's nationwide service of process provision. To the extent the district court had found the complaint failed to state a claim or was frivolous, the Court of Appeals vacated the decision; because jurisdiction was lacking, the substantive rulings had no effect. (ECF 9-2 at 82)

Courboin then filed the present action in this Court on April 13, 2015.

### D.  *Rooker/Feldman* and jurisdiction

Both the Smith defendants and the Scott defendants move to dismiss the complaint for lack of jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. They cite the *Rooker-Feldman* doctrine.

####   1.   Applicable standard

Rule 12(b)(1) governs jurisdictional challenges to a complaint. Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med.*

*Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

This might be considered a factual attack, because defendants (and plaintiff) proffer materials extrinsic to the complaint. The only materials I consider, however, consist of records of other courts, cited only in order to establish the nature and scope of prior proceedings between the parties. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.[1]

### 2. Discussion

Under the *Rooker-Feldman* doctrine, lower federal courts cannot entertain federal claims that were previously adjudicated in state court or are inextricably intertwined with a state court decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). A federal claim is inextricably intertwined with a prior state court decision if "granting the relief requested in the federal action requires

---

[1] The proceedings in the New Jersey Family Court, because they form the basis for the complaint, would properly be considered, even as to a facial 12(b)(6) motion. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court under the guise of an alleged constitutional error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013); *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005) (noting that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

The claims here—essentially that Jeanne's attorneys retained experts for trial at exorbitant rates, depleting the marital estate—are inextricably intertwined with the state divorce proceedings. (*See* C.1, *supra.*) They occurred in that action. Objection should have been (for all I know they may have been) asserted there. The divorce decree divided the marital assets that remained after expenses. The claims in this action are inextricably intertwined in that they attack the very basis for the state Family Court judgment.

Even more to the point, Courboin asserted claims virtually identical to those asserted here in the 2012 Morris County, New Jersey, state court action. (*See* C.2, above). That action was dismissed with prejudice.

Both prior actions, support application of *Rooker-Feldman*.

"If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840. Mr. Courboin's response to the motion simply repeats and expands upon the allegations of the complaint. Concerned substantially with rulings of Judge DeMarzo, and attaching transcript excerpts, it tends to confirm that Courboin's complaint arises solely from matters intrinsic to the family court proceeding. (ECF no. 14)

Attempts to attack family court judgments in federal court are not unheard of. Such cases, however, are just as routinely dismissed under *Rooker-Feldman. See, e.g., Young v. Dubow,* 411 F. App'x 456 (3d Cir. 2011) (affirming dismissal of complaint filed by mother against all entities and persons connected to state court proceedings that had awarded child custody to father); *Johnson v. City of New York,* 347 F. App'x 850 (3d Cir. 2009) (affirming district court application of *Rooker-Feldman* to bar claims that would effectively review family court decisions); *McKnight v. Baker,* 244 F. App'x 442 (3d Cir. 2007) (affirming summary judgment against plaintiff who had alleged conspiracy to deprive him of visitation rights).

In addition, the current action directly attacks the dismissal of virtually the same claims in the Morris County action. (*See* C.2, above.) This, too, invokes *Rooker-Feldman.*

This action is therefore dismissed for lack of jurisdiction.

### E. Other grounds for dismissal

For the sake of thoroughness, I briefly discuss other grounds for dismissal. These are alternative grounds; assuming the validity of the *Rooker-Feldman* jurisdictional ruling, *supra,* they need not be reached

#### 1. Res judicata

*Rooker-Feldman* aside, the judgment in the Morris County state court action (*see* C.2, *supra*), should be given preclusive effect. The claims in the current action could have been raised, and for the most part were raised, in that action. The action was finally dismissed with prejudice.

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Congress has specifically required all federal courts to give preclusive effect to \*518 state-court

judgments whenever the courts of the State from which the judgments emerged would do so."). New Jersey claim preclusion law, like federal law, has three basic elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599, 124 N.J. 398 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984) (federal law).[2]

New Jersey also has a robust "entire controversy" rule, an equitable doctrine that extinguishes any claim that could have been, but was not, raised in a prior action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. See *DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

The prior state court judgment was on the merits, *see Velasquez v. Franz*, 123 N.J. 498, 507, 589 A.2d 143, 148 (1991) (under both federal and New Jersey law, dismissal with prejudice for failure to state claim is on the merits). It asserted nearly identical claims against the Scott defendants, and could have asserted them against the Smith or Barson defendants. The the current action arises from precisely the same events. Mr. Courboin has had, and availed himself of—not to say abused—the opportunity to pursue his claims. He is precluded from doing so any further in this action.

---

[2] The second Middle District of Florida action, although it overlaps in parties and subject matter, presents a more problematic issue as to whether the judgment was on the merits. (*See* C.5, supra.)

9

### 2. Failure to state a claim
#### a. Standard

Rule 12(b)(1) governs jurisdictional challenges to a complaint. Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. Here, the parties rely only on the complaint and matters relied upon in it, or attached to it.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly*, *see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where the plaintiff, like Mr. Courboin here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### b. RICO

A civil RICO claim requires standing: a proximate injury to business or property. *See* 18 U.S.C. § 1964(c) Once that is established, the claim requires (1) an enterprise affecting interstate commerce; (2) that defendants were employed by or associated with the enterprise; (3) that defendants participated in the conduct or affairs of the enterprise; and (4) that they did so through a "pattern" of racketeering activity. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985); *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir. 1999).

Here, the "injury" is a rather indirect one, consisting of the ex-wife's depletion of the marital property through expenses in the course of the divorce proceedings. This complaint fails to allege a coherent enterprise or participation. Nor is there alleged a pattern of racketeering activity, consisting of two or more predicate crimes in a ten-year period, standing in the requisite relation. Allegations of overpayment for experts or tactical disagreements fall

far short of alleging a predicate criminal offense listed in 18 U.S.C. § 1961. Hyperbolic accusations of "thievery" (actually, overcharging) are no substitute. As for an enterprise, generalized, unsupported allegations about corruption of the legal profession or the courts will not do. Nor does plaintiff, simply by stating that they are all corrupt, allege facts tending to show the existence of an enterprise that engaged in a pattern of racketeering activity.

It was for these reasons, among others, that the Eleventh Circuit found that very similar allegations in the second federal action in Florida did not state even a "colorable" RICO claim. (*See* C.5, *supra*). I will not repeat that Court's reasoning (ECF no. 9-2 at 88-90), but I do adopt it.

### c. Sherman/Clayton Acts

The complaint also fails to state a claim for violation of the antitrust laws, because the requisite factual support is absent. I write briefly.

As to a Sherman Act claim under 15 U.S.C. § 1, the complaint does not define a relevant geographic or product market. It does not offer a coherent account of how competition is restrained (indeed, plaintiff states that he easily found cheaper alternatives). And although plaintiff claims that the marital assets were reduced by the wife's litigation choices, he does not explain how that constituted an antitrust injury—*i.e.*, one resulting from a competitive restraint—as opposed to an incidental injury. *See generally Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464–65 (3d Cir. 1998) (§ 1 claim requires combination; anticompetitive effect within a relevant product and geographic market; an illegal object; and proximate antitrust injury); *Fleer Corp. v. Topps Chewing Gum*, 658 F.2d 139 (3d Cir. 1981).

As to a monopolization claim under 15 U.S.C. § 2, there are no plausible factual allegations as to a relevant market, or these defendants' possession of monopoly power in that market. *See generally Eastman Kodak Co. v. Image Tech. Svcs., Inc.*, 504 U.S. 451 (1992); *A.D. Bedell Wholesale Co. v. Phillip Morris, Inc.*, 263 F.3d 239, 249 n.27 (3d Cir. 2001).

As to a claim under the Clayton Act, 15 U.S.C. § 4, there are no factual allegations indicating that Mr. Couboin suffered as a "direct purchaser" of the relevant product. *See Illinois Brick v. Illinois*, 431 U.S. 720, 728 (1977). Indeed, any injury from the wife's litigation decisions is quite indirect.

Mr. Courboin alleges a "tying arrangement" (presumably between legal services and appraisal services). That allegation lacks factual support. There is no allegation that Mr. Courboin's ex-wife was forced to choose an appraiser, and no account of how that could have occurred. Even assuming that Mr. Courboin has standing to assert her alleged injury, there is no evidence that a "seller" is coercing buyers "to purchase [a] tied product when they otherwise would not." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 385 (3d Cir. 2005).

## CONCLUSION

For the foregoing reason, the motions to dismiss (ECF nos. 7, 9) are GRANTED to the extent that the complaint is dismissed as against the Smith Defendants and the Scott Defendants for lack of jurisdiction under *Rooker-Feldman*. The other grounds for dismissal are discussed and granted, but only in the alternative, should jurisdiction be found.

An appropriate order accompanies this opinion.

Dated: March 3, 2016

_____
KEVIN MCNULTY
United States District Judge